**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Sergi A.G.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**
**Civil File No. 26-03393 (MJD/SGE)**

---

Katherine Rollins, MacDonald Hoague & Bayless, Counsel for Petitioner.
David W. Fuller, Derek Granzhorn, Assistant United States Attorneys, Counsel for Federal Respondents.

---

This matter is before the Court on Petitioner Sergi A.G.'s Petition for Writ of Habeas Corpus ("Pet."). Petitioner claims he is being detained in violation of his constitutional and other rights.

## I. FACTS[1]

Petitioner is a citizen of Honduras who lawfully entered the United States on September 13, 2024 on an H-2 visa as a non-immigrant temporary non-agricultural worker. He is a resident of Wilmar, Minnesota. (Pet. ¶¶ 15-16; Doc.

---

[1] Undisputed facts from the Petition are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

6-1 (Form I-213) at 1.) Petitioner overstayed his visa, which expired on December 28, 2024. (Doc. 6-3 (Notice to Appear ("NTA")) at 1.)

Petitioner is employed. (Pet. ¶ 16.) He has a seven-year-old noncitizen daughter who lives with her mother in the U.S. He supports his daughter, but would not disclose her residence to ICE. (Id. ¶ 14; Form I-213 at 4.)

At approximately 6:45 a.m. on May 28, 2026, Petitioner was in Mayville, ND and was riding to work in a vehicle owned by his employer, whom ICE had identified as a person without legal status or approved documents to be present in the United States. (Pet. ¶ 18; Form I-213 at 2.) Petitioner was one of 5 people in the vehicle and was seated in the back seat when the vehicle was pulled over by the local sheriff. (Pet. ¶ 18; Form I-213 at 2-3.) Four ICE agents wearing "ballistic vests marked 'POLICE ICE & US BORDER PATROL'" arrived shortly afterward. (Pet. ¶ 18; Form I-213 at 2.) ICE was attempting "to determine if the registered owner of the vehicle was illegally present in the United States." (Form I-213 at 2.)

Petitioner told the agents that he had an ID and a work visa, but failed to produce either. (Id. at 3.) ICE agents attempted to photograph Petitioner, who kept turning his face away so that officers would not be able to use the Mobile

Fortify app. to photograph, and eventually identify, him. (Id.) ICE Agent Fleck finally obtained Petitioner's photo and identified him as a citizen of Honduras who had overstayed his visa. (Id.; Pet. ¶ 21.) Petitioner's visa was for an employer in Texas. (Form I-213 at 3.)

Petitioner "was told he was under arrest and placed in handcuffs." (Id.) They left that location because the property owner requested that the ICE agents leave as soon as possible. (Id.) Petitioner was then transported to the Grand Forks County Correctional Center, where an ICE office is also located, and was served an I-200 administrative arrest warrant and an NTA. (Pet. ¶ 26.) Petitioner was processed, spent the night in the Correctional Center, and was transferred to the Crow Wing County Jail in Brainard, MN, where he stayed until July 15, 2026 when he was again transferred to the Kandiyodi County Jail in Willmar, MN. (Id. ¶¶ 28, 29.)

On June 6, 2026, Petitioner requested a bond redetermination hearing before an immigration judge ("IJ"). (Doc. 6 (Benjamin Northwood Decl.) ¶ 11.) On June 11, 2026, an IJ at Fort Snelling denied Petitioner bond because Petitioner did not meet his burden to show that he was not a flight risk. (Doc. 7-1 at 3.) The IJ stated that Petitioner "has resided in the United States for approximately two

years[;] . . . does not have any lawful family members[;] . . . is currently employed, albeit without permission[;] . . . [and] has an insured vehicle but no other significant property ties." (Id.) Therefore, the IJ concluded that "[d]ue to the short duration of presence, minimal ties, and lack of relief, bond is denied" and voluntary departure appeared to be the only form of viable relief in the proceedings. (Id.) Petitioner did not appeal to the Board of Immigration Appeals ("BIA"). (Doc. 6 ¶ 12.) He is currently in ICE custody at the Kandiyodi County Jail. (Pet. ¶ 29.) Petitioner is not subject to a final order of removal.

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 23, 2026. That day, the Court issued an Order to Show Cause. Respondents responded and Petitioner replied.

## II. DISCUSSION

Petitioner argues that his detention violates his Fourth Amendment right against unlawful seizure, his Fifth Amendment procedural due process rights, the Administrative Procedure Act, and the Accardi Doctrine.

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. §

2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to noncitizens outside of our geographic borders. But once a noncitizen enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is "lawful, unlawful, temporary, or permanent." Id. at 693 (citations omitted). Petitioner must prove unlawful detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Petition Verification**

Respondents begin by arguing that the Court should dismiss Petitioner's petition because it lacks proper verification. (Doc. 5 at 2-4.) Respondents specifically argue that Petitioner's counsel, who personally swore to the accuracy of the habeas petition, failed to properly verify the petition because she gives "no explanation why Petitioner was unable to review and verify the Petition" when she knows where Petitioner is located. (Id. at 3.)

A petition for writ of habeas corpus must "be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. 2242. The Court is persuaded by reasoning laid out in Vu V.L. v. Mullin:

> A person acting on behalf of a habeas petition might sign and verify the petition because of the petitioner's inaccessibility, mental incompetence, or other disability. . . . [O]ne early American court explained that it was a "frequent practice" to present habeas petitions in deportation cases signed and verified by others than the person detained because often for lack of time, . . . it [is] impossible to present a petition signed and verified by the person detained. That concern rings true nearly 120 years later. As courts in this District have observed over the last several months, ICE has been less than diligent in communicating with detainees and their counsel regarding a detainee's circumstances of detention and has transferred detainees frequently, quickly, without notice, and often with no way for attorneys to know where or for how long their clients will be at a given facility. These circumstances—notably, created by the Government—no doubt present the sort of "inaccessibility" and "lack of time" that justifies an attorney to act on a petitioner's behalf in signing and verifying a habeas petition.

No. 26-CV-2947 (LMP/JFD), Docket No. 8 (slip opinion) at 6–7 (D. Minn. July 1, 2026) (citations omitted) (second set of brackets in original). The Court considers the habeas petition properly verified.

**C. Fifth Amendment Due Process**

**1. Petitioner's Arguments**

Petitioner argues that he is being held without bond because at his bond hearing, the IJ incorrectly placed the burden on him to show that he was not a flight risk. He notes that while it would be inappropriate to ask this Court to overturn the merits of the immigration court's decision, the "Court can review whether the bond hearing itself satisfied the Fifth Amendment's guarantee of procedural due process." (Doc. 8 at 1 (quotation omitted).) Petitioner states that this Court granted this habeas relief in Eliezer B.S. v. Berg, 26-cv-03020 (MJD/DTS) (D. Minn. July 1, 2026).[2] Petitioner argues that absent an "individualized determination that confinement is necessary," his detention violates due process. (Pet. ¶ 43.)

While under 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General under [§ 1226] regarding the detention of any [noncitizen] or the revocation of bond or parole," a claim attacking the

[2] Petitioner's citation to Eliezer is misplaced because in that case, the petitioner had not yet had a bond hearing and the Court ordered that the petitioner receive one after the Court found that the petitioner was detained pursuant to 8 U.S.C. § 1226(a) rather than § 1225. 26-cv-03020, Docket No. 15 (slip opinion) at 7-9.

"'statutory framework' governing bond hearing procedures 'as a whole'" falls outside of the scope of § 1226(e). Sabirov v. Easterwood, No. 7:26CV5010, 2026 WL 1998800, at *2 (D. Neb. July 10, 2026) (quoting Jennings v. Rodriguez, 583 U.S. 281, 295-96 (2018)). Petitioner is detained pursuant to § 1226(a). Under § 1226, the Attorney General may release noncitizens on bond, except for those subject to mandatory detention pursuant to § 1226(c), which addresses noncitizens detained due to criminal and terrorism offenses. The Court finds that Petitioner here is attacking the "statutory framework" governing bond hearing procedures and thus the Court may address his claim.

**2. Relevant Law**

An ICE agent makes the threshold decision as to whether a detained noncitizen should be released under the discretionary detention provision of § 1226(a). 8 C.F.R. § 236.1(c)(8) (stating that a noncitizen may be released on bond or conditional parole). To be released, the noncitizen "must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." Id. If the noncitizen is detained, he can seek review of that decision at a bond hearing before an immigration judge. § 236.1(d)(1). The choice to put the burden on the

petitioner at these initial bond hearings was made in 1996. See Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021). Assignment of the burden to the petitioner was a change from a decades-long policy of interpreting silence in § 1226(a) as to the burden of proof at bond hearings as a presumption in favor of "liberty pending bond removal proceedings." Id. at 26 (citation omitted).

> In 1996 Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). IIRIRA adopted what is now the current version of the mandatory detention requirements of section 1226(c). IIRIRA did not alter the discretionary regime of section 1226(a) except by increasing the minimum bond amount from $500 to $1,500.
>
> Nevertheless, following the enactment of IIRIRA, the Immigration and Naturalization Service (INS) adopted new regulations establishing a presumption of detention in the initial custody determination by the arresting officer. See 8 C.F.R. § 236.1(c)(2)-(8). Under those regulations, a noncitizen seeking release bears the burden of "demonstrat[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." Id. § 236.1(c)(8). Although that regulation applied only to the custody determination by the arresting officer, the BIA soon adopted that standard for section 1226(a) bond hearings before an IJ, reversing its prior rule.
>
> Accordingly, under current BIA precedent, a noncitizen detained under section 1226(a) must demonstrate to the satisfaction of the Immigration Judge that he or she merits release on bond, . . . though section 1226(a) does not explicitly contain such a requirement. To do so, the noncitizen must prove that he or she is neither a danger to the community nor a flight risk. In contrast, the government need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings.

Id. at 26-27 (citations to caselaw omitted) (brackets in original); Sabirov, 2026 WL 1998800, at *3 (while neither § 1226(a) nor its corresponding regulations "delineate what burden of proof applies at a bond hearing before an immigration judge or who bears that burden," the BIA "has adopted the rule from § 236.1(c)(8) in bond hearings") (citations omitted).

While there is a circuit split on the issue of whether the burden should remain with the petitioner for subsequent bond hearings, the issue of the burden at the initial bond hearing appears well-established for 30 years. See Sharon Shaji, The Due Process Owed to Noncitizens: Standardizing the Burden in § 1226(a) Bond Hearings with the Help of Hernandez-Lara and Velasco Lopez, 44 Cardozo L. Rev. 1635, 1648-57 (2023) (discussing circuit split). The Eighth Circuit has not yet decided the issue of the burden at a subsequent hearing.

Petitioner's citations are unavailing. First, Hernandez-Lara addressed the burden of proof required at a subsequent bond hearing, not an initial hearing. 10 F.4th at 23, 41. Second, Oscar M-S v. Garland, was an R&R that was never ruled on because subsequent occurrences mandated remand to the IJ. No. 021-CV-1341-WMW/KMM, 2021 WL 8013822, at *1 (D. Minn. Dec. 20, 2021), R&R rejected sub nom. Oscar M.-S. v. Garland, 2022 WL 1050054, at *2 (D. Minn. Apr. 7, 2022).

Third, to the extent Petitioner wants the Court to rely on Marco A. C.-P. v. Garland, a case Petitioner notes was quoted in Oscar M.-S., the facts of that case are inapposite to the facts here. In Marco A. C.-P., the court addressed the detention of a noncitizen who was subject to a final order of removal and who had been held in detention for more than 590 days without a bond hearing with no indication of when the BIA might rule on an appeal of the IJ's asylum order or any indication that the petitioner's removal was reasonably foreseeable in the near future. No. CV 20-1698 (JRT/TNL), 2021 WL 1976132, at *1, *4-5 (D. Minn. May 18, 2021) (adopting R&R).

Because the IJ applied the correct burden of proof at Petitioner's initial detention hearing and because he did get the "individual determination" he seeks despite the outcome, Petitioner's Fifth Amendment Claim fails.

**D. Warrantless Arrest**

The parties agree that Petitioner is being detained pursuant to 8 U.S.C. § 1226(a). However, they disagree as to whether his arrest was warrantless.

**1. Warrantless Arrest Under 8 U.S.C. § 1226(a)**

Section 1226(a) prefaces arrest "[o]n a warrant issued by the Attorney General." Thus, to detain a noncitizen under § 1226(a), a warrant is required.

Martha C.G.P. v. Blanche, 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) (citing Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (collecting cases)).

A Form I-200 is the administrative arrest warrant that authorizes a non-citizen's arrest. The I-200 must be issued "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The NTA is the document that initiates removal proceedings. See 8 CFR § 239.1. "Putting both rules together, DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA. See 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1)." Dylan M. v. Blanche, 26-cv-02802 (JMB/LIB), Docket No. 12 (slip opinion) at 9.

Here, the Form I-200 and the NTA were issued on May 28, 2026, the same day as Petitioner's arrest. (Docs. 6-2; 6-3.) However, the record does not show that the NTA was generated before or at the same time as the Form I-200 because there are no time stamps. The sworn affidavit submitted by Respondents that attests to the authenticity of their exhibits was written by an affiant who has no personal knowledge of when or how the documents were issued or served, which does not help the Court. (Doc. 6 ¶¶ 1-3, 8-9.)

What is clear, however, is that Petitioner was arrested while still in or around the stopped vehicle at the location where the vehicle was stopped. Neither the I-200 nor the NTA was served on Petitioner until after the vehicle had left that location. (See Form I-213 at 3 (stating that Petitioner "was told he was under arrest and placed in handcuffs" and "served an I-200 shortly after leaving the original location of the vehicle stop as it was requested by the property owners that officers leave as soon as possible") (emphasis added).) While Respondents offer up that the property owner asked them to move as a seeming-excuse for not acquiring and/or drafting the NTA and I-200 until later, that argument is without merit. The I-200 should have existed prior to ICE arresting Petitioner. Without it, this was a warrantless arrest. Likewise, while the NTA was issued on the same date as the I-200, without time stamps, the Court is left to guess at whether it was issued prior to or at the same time as the I-200. Thus, the I-200 is invalid because it was issued in the field or after Petitioner was arrested and detained. Francisco M.A. v. Blanche, Civil No. 26-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026); Jouquin C.S. v. Bondi, Civil No. 26-1438 (DWF/DJF), 2026 WL 483256, at *2 (D. Minn. Feb. 20, 2026) ("A detainee being held pursuant to § 1226(a), as Petitioner is here, must have been served an arrest

warrant prior to detention.") (emphasis added); Ahmed M., 2026 WL 25627, at *3 (same) (collecting cases); Chogllo Chafla v. Scott, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Since the Government did not comply with the plain language of section 1226(a), [petitioners'] immediate release is justified.").

### 2. Warrantless Arrest Under 8 U.S.C. § 1357

> [Ice agents] have the power without a warrant . . . to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation . . . or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest. . . .

8 U.S.C. § 1357(a)(2).

Section 1357 implicates the Fourth Amendment's protections. The Fourth Amendment protects all individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest qualifies as a "seizure" and therefore must be supported by probable cause. United States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992). Fourth Amendment protections apply to seizures of noncitizens. United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010). Because § 1357(a)(2) implicates seizures of noncitizens, "reason to believe" in the statute means "constitutionally required probable cause." Id. Probable cause exists when, based on the totality of the circumstances, facts are "sufficient to lead a

reasonable person to believe that the suspect has committed or is committing an offense." Garang v. City of Ames, 2 F.4th 1115, 1121 (8th Cir. 2021) (cleaned up).

Putting this all together, for the warrantless arrest of Petitioner to be valid under § 1357(a)(2), Respondents must have had probable cause to support that Petitioner was (1) not lawfully present and (2) likely to escape before they could get a warrant based on the totality of the circumstances. The burden is on Respondents to prove both elements of a valid warrantless arrest. The failure to do so requires that the petitioner be released. Cutberto R.P. v. Blanche et al., No. 26-cv-01934 (MJD/DTS), Docket No. 11 (slip opinion) at 14 (holding that release was proper remedy when Respondents did not act within their constitutional authority in effectuating petitioner's arrest); Jefferson G.H.L. v. Blanche, Civil No. 26-2344 (JRT/ECW), 2026 WL 1229623, at *3 (citing Ruben D.A.G. v. Blanche, No. 26-CV-02041 (MJD/DJF), Docket No. 9 (slip opinion) at 8 (D. Minn. April 20, 2026)) ("Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen.")).

Respondents argue that when Petitioner stated that he had a work visa but was then unable to produce it, ICE officers created a reasonable inference that Petitioner was in the country illegally because noncitizens are required to carry

identification with them at all times. (Doc. 5 at 8 (citing 8 U.S.C. § 1304(e) (providing that an alien who fails at all times to carry an "alien registration or alien registration receipt card" shall be guilty of a misdemeanor).) They also point out that when agents finally photographed Petitioner, they discovered that he had overstayed his visa and was therefore in the country illegally, which was more evidence that Petitioner was "in the United States in violation of any such law or regulation." (Id. at 10 (citing 8 U.S.C. § 1357(a)(2)).) This, in addition to reasonable suspicion that Petitioner had violated § 1304(e) and his failure to provide documents supplied probable cause for arrest. (Id. at 9 (citing Barrera v. D.H.S., 07-cv-3879 (JNE/SRN), 2009 WL 825787, at *6 (D. Minn. March 27, 2009) (noncitizens' statements they were legal residents not in possession of their papers created probable cause of violating § 1304(e)).)

Respondents also assert that Petitioner "was clearly an escape risk" because he was "in the back of a functioning motor vehicle" and had refused to answer agents' inquiries, "leaving them with no idea of his name, address, or any other pertinent information about him," even after photographing Petitioner. (Id.) Respondents note that the IJ "has already conducted the analysis" with more information than agents had on scene when Petitioner was arrested. (Id.)

The Court finds that Respondents had probable cause to believe Petitioner was in the country illegally after discovering he had overstayed his visa.

However, the record evidence does not support that agents had reason to believe Petitioner was likely to escape before a warrant could be obtained for his arrest. "Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen." Ruben D.A.G., No. 26-cv-2041, Docket No. 9 (slip opinion) at 8; Francisco M.A., 2026 WL 1229701, at *3 (to hold that noncitizens are likely to escape merely because they are removable would collapse § 1357(a)(2)'s "two distinct requirements" . . . into one).

ICE agents on scene had the "burden to make a 'particularized assessment' into whether the noncitizen is likely to evade detention," meaning that he could not be located at another identifiable location after a warrant was obtained. Anibal P.P. v. Blanche, 26-cv-3125 (LMP/LIB), 2026 U.S. Dist. LEXIS 153824, at *10 (D. Minn. July 13, 2026) (quoting Orellana v. Nobles Cnty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017)). Here, all Respondents had was information that Petitioner had overstayed his visa (i.e., that he lacked lawful presence). Petitioner had not even been the target of the vehicle stop.

Respondents' argument that Petitioner's situation as a backseat passenger in a car loaded with five individuals somehow made him a flight risk is absurd. The vehicle did not belong to Petitioner and there is no indication that Petitioner or anyone else was even out of the car when the decision to arrest Petitioner was made. How, exactly, Petitioner was supposed to crawl into the front seat, take control of a vehicle surrounded by four ICE agents, and escape is a lawyer-created argument not based in the facts of the case. See Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 804 (8th Cir. 2006) (noting that assertions made by counsel in briefs are not evidence). No ICE agents stated this. Petitioner's I-213 Form contains nothing about thoughts of the agents on scene or any calculus made regarding flight risk beyond Petitioner's immigration status. (Doc. 6-1.)

Likewise, Respondents' argument that the IJ has already done the analysis is also flawed. The IJ applied a long list of factors regarding flight risk in the calm of a courtroom, not on the scene, where the Court agrees with Respondents there was less information available for review. However, ICE policies related to warrantless arrests and found in a January 28, 2026 memorandum from Acting ICE Director Tom Lyons states that a removable noncitizen is "likely to escape" "if an immigration officer determines he or she is unlikely to be located at the

scene of the encounter or another clearly identifiable location once an administrative warrant is obtained," a determination that must be "based on the totality of the circumstances known to the immigration officer at the time of the encounter and prior to the arrest" and providing a list of relevant factors that may be considered. Hussen v. Noem, 822 F. Supp. 3d 944, 981–82 (D. Minn. 2026) (quoting Lyons Jan. 28, 2026 Memo ("Lyons Memo") (emphasis in original)). The memo also states that after an agent conducts a warrantless arrest, the agent must "clearly, succinctly, and contemporaneously document in the Form I-213 all factors considered in determining that the alien was likely to escape before a warrant could be obtained." Id. at 982 (quoting Lyons Memo) (cleaned up).

Here ICE agents arrested first and asked questions later. Looking at Petitioner's I-213, Petitioner provided a local address, something Respondents do not claim ICE agents attempted to obtain prior to arresting him. This failure undermines any argument that ICE agents on the scene had reason to believe Petitioner was a flight risk. See Anibal P.P., 2026 U.S. Dist. LEXIS 153824, at *10 (citation omitted). In addition, Respondents clearly had information about Petitioner's employer since the employer's vehicle was the target of the stop.

Agents likely could have obtained information about Petitioner from the employer, if they did not already have it from Mobile Fortify. Finally, as discussed above, agents violated their own policies by failing to document in the Form I-213 why Petitioner was a flight risk.

In conclusion, Petitioner was not a flight risk under § 1357. Respondents' failure to support the required particularized determination that Petitioner was likely to escape is, on its own, sufficient to grant the petition. See Orellana, 230 F. Supp. 3d at 946 ("Without any showing that [Defendant] was likely to escape before a warrant could be secured, the warrantless arrest made under § 1357(a)(2) violates the Fourth Amendment.")

Resolution of the Fourth Amendment issue renders discussion of other arguments unnecessary.

**E. Remedy**

Because the Court finds that Respondents did not act within their statutory authority in effectuating Petitioner's arrest, there is no lawful basis for his continued detention. Petitioner's detention violates the Fourth Amendment. Accordingly, release is the appropriate remedy. See, e.g., Ahmed M., 2026 WL 25627, at *3 ("Where the record shows Respondents have not identified a valid

statutory basis for detention in the first place, the remedy is not to supply one through further proceedings.") (quotation omitted).

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED as follows:**

1. Respondents are ordered to immediately release Petitioner pending the issuance of a final order of removal;

2. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

3. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, passport, cell phone, keys, etc.;

4. Petitioner shall be released on his own recognizance without any conditions upon his release, other than legal routine periodic check-ins with immigration; and

5. Respondents are ordered to confirm with the Court Petitioner's release from custody within forty-eight (48) hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 31, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court